There we go. Good afternoon ladies and gentlemen. I'm Judge Dennis. I'm accompanied by Judge Higginson and Judge Willett will be your panel today this afternoon. Your case is United States of America v. Michael Herman and Cynthia Herman. So we'll call that case and start with Ms. Jennifer Friel. Good afternoon. May it please the court, I'm Jennifer Friel and I'm representing Cindy Herman. I'm also arguing for Michael Herman today and Kristen Davidson with the Federal Public Defender's Office will be handling rebuttal. This case is about the Herman's right to present a defense. That right was violated by multiple erroneous evidentiary issues. Now Halloween was just a few days ago but the horror story for the Herman's started years ago. An undercover agent flew down from Michigan to Bastrop, Texas and recorded 10 hours of conversations with the Herman's and there was one theme in those over and over and over again. He said tell me about the cash. How much cash are you getting out of this business? I want to know about the cash and the nightmare continued into the trial. Multiple evidentiary issues piled up to the point the jury didn't hear critical evidence. The jury never heard testimony from the Herman's expert witness. The jury never heard audio clips that would have put the government's audio clips from those undercover recordings into context and the jury also didn't hear critical cross-examination testimony that would have gone to the heart of the government's case and really their lead witness, the undercover who had done all of those recordings. I want to begin by starting with the expert witness. The Herman's proffered the testimony of William Brown. He is a former FBI agent, CPA and Brown was going to testify that the Herman's they didn't willfully commit these crimes. They're just bad at bookkeeping. This is a simple couple from Bastrop, Texas trying to run a business and yes they did pay personal expenses with their business account but at about an equal amount they paid their business expenses with their personal accounts. They also, the government made this case, if you read the indictment, the government indicted the Herman's for making false receipts on their taxes, gross receipts, not cash. A trial it was all about cash but was actually charged was this issue of gross receipts and Brown would have testified that the gross receipts number, it was all wrong. The Herman's had hired an accountant, Greg Pedden and Pedden who they actually paid this guy $41,000 over the course of this alleged conspiracy to do their taxes and Brown would have explained that Pedden got the gross receipts number all wrong, that that number included transfers between banks and loan repayments and as a result what was on the tax forms was a number that really just didn't draw enough attention that there could be missing cash. Essentially the over-reporting of gross receipts obscured the under-reporting of the cash. We've all been in a situation maybe at a restaurant or somewhere where you don't get enough change back or maybe you get too much change and if it's a dollar or two it might not get your attention but if the number's bigger, if you're expecting you know 40 bucks back and you only get that. I want to hear on the 106 issue too but I noticed and paid attention closely to the exclusion of a defense expert but Judge Rodriguez addressed it pre-trial and he was very careful to say I'm going to wait and I'm going to have a proffer and that proffer was sort of question and answer and quite thorough and am I right that Brown admitted he'd never looked at cash not being reported and he never looked at personal expenses being disguised as business expenses. He was very clear he had no information. If that's true then Judge Rodriguez's ruling was not an article you know a 700 ruling it was a 413 ruling that this would just confuse jurors so he's got a lot of discretion. Right he does have discretion but I would disagree with the proffer when exactly how you would you described it. Again it sort of misses the mark about is this cash or gross receipts. What Brown was testifying about was that narrow issue of gross receipts and essentially the jury never got to hear it. But I'm gonna press you on that then where can you point to in the record or in closing argument that the government relied on overstated gross receipts because I don't I admit it was charged but no one's making a constructive amendment argument here. Where did the government rely on that to convict her? They made their case about the cash and the cash testimony came from the undercover recordings and you're right the defense was the one who wanted to focus on gross receipts but without Brown's testimony it was nearly impossible to make that argument to the jury that listen the government charged gross receipts. They're telling you all about cash that comes from these really I think egregious government overreach. That's a variance argument and that's not before us right that's saying oh you charge something but you prove something differently. What's before us is whether or not it was a proper 403 ruling to exclude Brown on the notion that Pedden's miscalculations are really just confusing in this case. And you know if we want to focus on whether or not it was confusing uh this court in the Cavin case said that when you're looking at specialized areas of the law it's important to allow expert testimony on that. Accounting by its own nature to the lay juror might be confusing but the government got to put on agent Fanning who essentially provided expert testimony and the defense never got to. And the defense to present a case needed to be able to explain what gross receipts were what gross receipts are and and how that was um was really a key element to this issue that Cynthia Herman who only has a high school education is given a tax form from her paid accountant and on the line for gross receipts the number looks right. In our reply brief we showed the percentages for years and in one year it was just 1.6 percent off. Pedden would have said I'm sorry Brown our expert would have said Pedden got it so wrong he got it so wrong putting these bank transfers in and these loan transfers in that Cynthia Herman when she was given this thing to sign she did not have the mens rea she did not have the willfulness she did not see how off that number was and and you know accounting testimony can be a expert testimony by its very nature you're asking an expert to explain something that's complicated um but I think Rodriguez went too far when he said it was uh confusing uh it was it was critical the the probative value of of of his testimony was so high that that the jury should have heard it. It goes to a 10 for the 371 it would go to knowledge and to the for the 7206 it would go to willfulness. Willfulness especially given that I mean there's so much testimony about the sloppy bookkeeping um the how how the checks were coded the fact that that Herman's wrote a check for the utilities and they put the business account and the personal account on it uh it was just sloppy accounting. Do you think of a case or do you know a case where incompetent bookkeeping expert testimony negated intent in a tax case? Well I do have a tax case um that I that is pretty interesting involving um the sale of plasma it's the Garber case uh it's it's from the late 70s and there was a question of whether you make money by selling your plasma whether that's income it's a it's an interesting little case to read and um yes uh the case was reversed reversed a tax conviction where the expert was included who would have opined on whether the sale of plasma created taxable income. It's not exactly what you said about poor bookkeeping but it goes to the the idea that in tax cases I mean there's a reason Congress wants willfulness because everyone pays their taxes and a lot of people get an accountant to help them with it so to be charged with a crime and be convicted of a felony you've got to prove willfulness and the fact that that gross receipts number was so dang wrong Cynthia Herman and Michael Herman got that tax form and they didn't see the error. I would like to get to 106 you mentioned you have some questions about it I think this again goes to the heart of this case it's the standard for 106 is fairness right um it's a rule of completeness and if in fairness a statement needs to be offered to put the the other statement the other side statement into into context it should be and here what we had again were um these cherry-picked statements from the government about cash and oh we're going to get the cash and how are we going to get the cash but the but the jury didn't get to hear that the Hermans also said you know we we take a salary they weren't using the business as their piggy bank that they didn't get to hear that um while agent Vela who's pretending to be a buyer is asking about cash Mike Herman kept trying to he's like well if you want to make money judge Rodriguez was pretty judge Rodriguez was fairly careful and and what's wrong with well two questions one is did your clients ever seek to actually invoke 106 during Vela's direct during Vela's direct did they ever say we want to put in context now or did they agree to do it in cross most of the 106 um issues were were pre-trial um whether or not they raised it during the direct I'd have to double check that um but you'd agree with me the ring had shut it down I mean he had shut it down no I'm not sure I agree with that because he didn't shut it down what he said was you can bring it up and cross and there was both cross and recross of Vela and the Hermans were allowed to bring in their context statements over and over again including their answers in 32m and 32n so it looked to me like they got the context in extensively through Vela so what they shut down was actually admitting the transcripts in the audio I agree that they were allowed to cross examine on it but it but that's different it's different to say hey agent Vela did you say x y versus the actual audio and the tone and the exact words and the repetitiveness and and one thing that the trial lawyers did here is they actually created an exhibit exhibit 139 that showed the questions that showed them over and over and over again in the repetitive nature and and the judge didn't let that in as well uh so I why they could cross examine um agent Vela about about these statements by asking leading questions did you say x did you say y it's just not the same as having those actual clips and the fairness rules the fairness of 106 requires this uh I think it is reversible error especially when you put it together with with Brown uh the experts out what do you here's just a legal issue that was a little hard I think this is a difficult question but you may have a straightforward answer let's imagine their context included exculpatory statements by your clients do you think the law is that 106 requires that those exculpatory answers come in for their truth even if they're hearsay or is that not implicated in this case well I think that that this court certainly doesn't have to get to that question because we did offer the exhibit that took out the alleged hearsay and the alleged exculpatory statements but to the to the question if the court wanted to go there I was very convinced by the analysis of the D.C. circuit in the Sutton case that if for rule 106 to have any meaning there has to be the for some um otherwise inadmissible hearsay to be included uh and you know there's also a middle ground between that there it could have been admitted um with an instruction which Judge Rodriguez and all of our district court judges give instructions on many scenarios uh 404b comes to mind to tell the jury not to consider the statements for the truth of the matter asserted only to consider them for the context right but I don't think the court has to get to that issue of course um there is a somewhat of a circuit split it's not as clear as it could be some of the language from from the cases we cite uh it's not clear how much the the courts are actually weighing the issue as opposed to just uh uh dicta mentioning hearsay but certainly rule 106 is is an evidentiary um rule that really is to great benefit uh to both sides in civil cases criminal cases and certainly in criminal cases in the case like this where you have such an aggressive investigation by the undercover officer it goes straight to those um the the rights of the Hermans to present a defense I see I'm almost out of time I just want to close with there's so many cases out there where cumulative error don't get to the mark but I think this is one where it does I ask the court to reverse the convictions and vacate for a new trial so that the Hermans can present their defense to the jury I'm out of time okay we're next from from Kristen Davidson I'm rebuttal uh your honor so I believe Mr. Davis goes next okay okay may it please the court Gregory Davis for the United States uh returning to Judge Higginson's question talking about what the district court judge did in sorry with respect to William Brown the district court at pages 1795 to 1796 of the record on appeal went through a detailed explanation of why Brown's testimony would be excluded under rule 403 the court said I remain convinced that Mr. Brown's testimony is not relevant to the issues presented for the jury's consideration in this case that the testimony that Mr. Brown would have presented to the jury would merely cause confusion to the jury and would not aid the jury in its analysis of the lack of relevance the court pointed out that Brown is looking at this uh what 12 years after the fact the government sort of previewed in its response earlier that it wasn't convinced that all of Brown's recalculations were accurate so this was certainly something that I mean it was going to have to be gone into a detail and that was going to do nothing but confuse the jury um but it is a little I mean it's a little government essentially got two experts um in the case and then the defense had their one expert and the government charging document did focus on gross receipts not cash non-reported so I guess let me phrase that as a question why would it have been confusing to the jury to hear from Brown that um business expenses were paid with personal funds how how would that have been confusing uh that would not have been nearly as confusing as dealing with the gross receipts question uh that there was no dispute as far as the government is aware that the was 570 000 in cash was not reported to the account um Brown didn't challenge that the defendants haven't challenged that so that was certainly not something that was going to be before it now as you pointed out while the indictment charges uh gross receipts everything at trial was cash it was all about cash and unreported cash so to the extent if that was what was at issue um if you look at the indictment in the uh 371 county it talks about what was on what happened was cash wasn't reported so yes the substantive counts 72061 counts do say gross receipts but if you look in context it's fairly plain that the government was talking about all of the cash that was coming in that the defendant skimmed off the top and never reported to uh their accountant even though their accountant basically said I need to deposit all of this the defendants promised that they would do what what the uh accountants that had asked them to do but then they didn't okay I mean I guess the overlay that the emphasis they're giving is besides the charging decision sheik imposes a much higher scienter standard and so if they were just cheating a little rather than cheating a lot maybe the jury would have thought that they understand the argument uh it's hard to see how 120 000 is cheating just a little um many people I'm sure would be delighted to to have an extra 120 000 in their pocket and they wouldn't find that just a little cheating that's a lot of people are using personal money to cover business expenses I mean as Mr. Brown would have testified I presume wouldn't that have sort of negated um this deception intent and maybe showed they were sloppy or careless but not um your honor that relates to the um the payments essentially what the testimony was based on Mr. Brown's proffer that there were about 94 000 that they and 94 000 of personal expenses they paid using business funds so assuming that Brown's testimony was correct that was a wash but that did nothing to the amount of cash receipts that were not reported which is why I think in the brief we focus focus more on the cash receipts because that's very plain that that's not something Brown was able to challenge the standard review for excluding an expert here under 403 would be manifest error correct and if if we were to see that there were manifest error would it affect all counts um it's harder to see how it would affect the conspiracy count because the conspiracy count uh specifically deals with the cash receipts that's what it charges it charges that the cash receipts and I don't believe that it affects the other elements my concern with this case actually though and I don't mean to you you go in whatever direction you want to go my concern was really 106 which is a very important rule and as opposing counsel pointed out you've got 10 hours of surveillance sort of of sting tapes the government reduces that to about 23 minutes of best hits that are highly incriminating and then the defense has got it's whatever 43 minutes of no no no here's exculpatory stuff what exactly was that is the government's position we get to put in what we've pulled out is incriminating but you don't get to put in your exculpatory context no definitely not our response is that the excerpts that they are trying to introduce were not they don't fall within rule 106 I mean I we my office prepared a chart dealing with all 10 of the uh in in the reply brief in Cynthia's reply brief she goes through and if you look at the exhibit I mean if you go through the the clips are not what the excluded clip is not does not explain or qualify the clip that was played by the government okay well let's do that with a few I think it's exhibit 32f was excluded but if I'm not mistaken that's where they say we put all cash disposits in the bank how would that not be directly responsive to the government's favored clip that you can quote do whatever you want with the gaming machine government's leaving the implication that they said during these um you know secret tapes oh you can do whatever you with that cash coming out of the machine but they have another section that says we put it all in the bank of course I mean 32f they say they're responsive to government extra 57a which talks about being paid 800 in cash per month by was it call vending yes yeah it's difficult to see how we're talking 800 of those kinds of cash receipts it's difficult to to see how saying that we we deposit all of our cash and it's they don't I mean you say it's difficult but that just favors the government I mean it is it's responsive it might not be persuasively responsive but isn't that up to the jury I thought your answer would we will judge Rodriguez this requires fairness and he came up with a rule that was same day same topic and he let anything in that fit in that rule on cross and that's either legitimate 106 fairness or if he didn't it was harmless I certainly I'm happy to accept your honor's argument on my behalf well no you tell me if that is your argument I I well we have quite understand you're saying well we don't think that was contextually favorable to them is that a harmlessness argument I mean I I never thought 106 allowed you to sort of say well their context isn't real context is that is that what you're saying um I'm not saying that I'm just saying that it doesn't that as I read the excerpts the 32f is not really explained it doesn't relate to the uh $800 in cash receipts from the gaming okay what about 32j isn't that where they said we put every dime in the bank I mean that is definitely that's that that's you you certainly found the most difficult excerpts many of the excerpts that she points to have nothing to do with each other I know that I pick those two and so those that is his entire defense is we put the money in the bank and well he doesn't say that we put all of the money in the bank it's to the extent we have to the extent we deposited it went into this particular bank that's different than saying we deposited all of the money into the bank so to the extent it was excluded it would have been confusing simply because of the way it read because of because of what it says it doesn't say all of the cash we received went into the bank did did the hermans actually make a 106 objection during veil is direct as opposing counsel mentioned most of this was taken most of this happened before in the pre-trial hearing I know but I read those hearings and most of those judge Rodriguez said you know this is my view but I'm reserving judgment so I'm asking whether or not they ever actually requested 106 interjection or is this simply whether they were allowed to go down a route and cross or not which is more of a hearsay question I do not recall exactly but I but based on my memory I didn't do not remember during the the direct asking the defense asking to play the excerpts and that's when 106 comes in right 106 is not a cross-examination vehicle correct I as I said I I do not recall exactly but to the extent I remember the transcript I do not remember them asking during the direct of agent fella to be able to play the what they claim are responsive excerpts I could be wrong I hope I'm not but certainly I'm happy to look at the transcript again but what clearly did happen was on cross and recross judge Rodriguez didn't allow in the entire 32 series he let in m and n but many not others so then the issue is did he not do that properly because that's hearsay and it's inadmissible was that the government's position or do you think it was still sort of a 106 echo um we would classify it more as a 106 rather than hearsay here's I mean hearsay to the extent it was being offered for a purpose other than the truth of the matter asserted then it's not hearsay to the extent they were offering it for context um but of course then it becomes more difficult because the time to have offered it for context was during direct and not cross yeah I mean the district court certainly let them get in several statements that were favorable to them let's see sorry there were a couple of excerpts I think it's on page 30 of our of our brief either 30 or 31 that were more favorable to the defendants than many of the excerpts that they claim should have come in um let me see if I can yeah no no we know that we we he let in 32 m 32 n and those were very exculpatory they were they were much much more exculpatory than than than the better to follow the law to do what you're supposed to don't cheat this otherwise you have the state and the the county coming after you so the jury was aware that the statements were not all inculpatory um there were many statements that were exculpatory and just to the extent sorry no I don't want to beat a horse to death I mean I asked too many questions I definitely can't interrupt me but do you have last quick question that comes to mind do you have an opinion on whether 106 allows in hearsay I um I I can tell you that it's something that that my bosses and my bosses bosses are um are are talking about I it's I think it's something that has come up in the federal rules committee so it's it's a topic that's under um I think the best I can say is that the court doesn't have to go there yeah well that's what opposing counsel said too yeah I and I would agree with opposing counsel it's I don't think the court needs to reach that question okay thank you certainly is the court interested in the third mrs herman filed her 28 j you responded that the defendants in the second circuit in the eighth circuit case made the arguments that she in fact is making I didn't know if you had anything beyond that and I I should have asked miss friel a question about that but maybe I'll pester miss davidson on rebuttal um all I can say is that it was raised in the briefing but the second circuit and the eighth circuit didn't address it in result in rejecting the the claim that there has that there's a nexus requirement under section 371 I think as we point out in our brief the I mean the hammerschmidt and is very different than than marinello and aguilar these are not the same thing the history of the of the statutes are very different the language is extremely different um when you when you look at 371 I mean hammerschmidt sort of explained the limiting factor as the actually let's see there's deceit craft or trickery or at least means that are dishonest so the supreme court has already put judicial gloss on 371 um if the court if the supreme court wants to do anything else with 371 it's for the supreme court to do um this circuit's been rejected a nexus requirement in a client conspiracy have you no and there are no I believe there's still a couple of of pending um their petitions correct but uh I don't but the court has the supreme court has not accepted the cases and I think our argument is very solid that there's simply very different statutes they don't they don't involve the same things um for for 72 12a and 15 is 26 usc 72 12a and 18 usb 1503a you have the the due administration and the supreme court concluded that you needed to there needed to be more explanation of what due administration was otherwise the the statute the all various misdemeanor statutes that's not a problem in 371 371 we've got the explicit deceit craft or trickery or at least means it means that are dishonest so we don't believe that uh marinello has imposed a new statutory a new element of into the 371 defraud clause cases okay thanks if the court has no further questions the government asks that the court affirm okay thank you mr davis thank you i believe uh christian davidson has five minutes on rebuttal thank you your honor kristin davidson i represent michael herman but i'm providing rebuttal for both cynthia and michael herman today um judge higginson i want to start with your original question or concern about whether or not there was a constructive amendment or variance and i believe the answer is no i don't think that this is an issue where the government charged one thing and proved up another but how they proved their allegations is uh highly relevant to the evidence the defense was prevented um from submitting on behalf of their theory of defense and i can give you specific uh record sites where agent fannon very clearly uh testifies to his method which is um he assumes that cash was not deposited and he assumes that if cash was not deposited then it was not included in gross receipts he does his own analysis about whether or not um he can total up an estimate of cash receipts and he compares it to the numbers on the tax returns assuming those numbers are correct that is how he identifies what he believes is the missing total of cash receipts and also the overstated expenses that's how the government proved their case and that's fine the problem and the significant error that deprived the hermans of a fair trial is that the defense had affirmative witness testimony and a robust cross-examination all of which which would have undercut those assumptions by the agent and um and the government's case i thought i thought brown agreed under very strict questioning that he had not studied the cash non-depositing at all right he did not do an analysis of what the total cash receipts would be but the issue that the number i'm going to stick with gross receipts but this is equally true to expenses but the number of gross receipts is accurate but for his estimate of cash receipts and what bill brown would have testified to is that assumption that that total gross receipts is correct is wrong and he could clearly outline what those errors are it's the the crime in in these in these um counts both and um 7206 it's not that the number's wrong it's that it's knowingly and willfully wrong with an intent to defraud the united states so there's there's room for error um and as the error grows then uh we have evidence that goes to intent and whether or not there was the requisite mens we also have evidence that would cut against the credibility of the government's case and the investigation by fannin bill brown would have very clearly outlined where the accounting mistakes were that mr peeden made which were identified by agent fannin and adopted and incorporated into his analysis thereby infusing those same errors of accounting into the government's relevant not only to the facts that the or the evidence that the government alleges but directly to the to the theory of defense that we may not have best practices when it comes to bookkeeping and we may not have best practices when it comes to cpa accounting um but the errors themselves are not a criminal there there are other explanations than this willful and knowing davidson we've got just under a minute left can i steer you over to uh marinello um so miss friel earlier filed her 28j as to as to miss herman the government's replied and said well the defendants in those other two circuit cases they raised the arguments that or they did make the arguments that mrs herman makes here and i know you're on rebuttal responding for both defendants but what's your best argument for why our sister circuits are wrong on marinello and the relevance here i don't think it is um uh so formalistic to cabin the supreme court's reasoning to that and to make the standards so low um it would be it's hard to distinguish what is mistake and and what or even negligence and what is an actual willful intent um this is new area both parties have identified all the case law there is and and my only um addendum to the this is a concern that that addresses count one but the significant errors of of excluding bill brown cabining the defense cross-examination regarding the assumptions made by fannin and his investigation those are things that affect all counts and and for that reason uh the hermans um asked the court to vacate their convictions so they they can have a fair trial thank you miss davidson you've exceeded your time and so this case will be submitted and we'll call the next case for today thank you thank you